UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

APEX ROAD COMMERCIAL, LLC,                    Case No.: 8:19-bk-03648-RCT

     Debtor.                                    Chapter 7
_____/

### RENEWED MOTION TO COMPEL PRODUCTION
### OF DOCUMENTS FROM APEX ROAD COMMERCIAL, LLC

STEPHEN L. MEININGER (the "Trustee"), as Chapter 7 Trustee of the bankruptcy estate of APEX ROAD COMMERCIAL, LLC (the "Debtor"), through his undersigned counsel and pursuant to 11 U.S.C. §§ 541, 542, and 543, and other applicable law, files this Renewed Motion to Compel Turnover of Documents (the "Motion") from the Debtor. In support thereof, the Trustee states as follows:

### RELEVANT BACKGROUND

1.    On April 22, 2019 (the "Petition Date"), Petitioning Creditors, National Millwork, Inc., Universal Steel of North Carolina, LLC, and Site Specific Contracting (together, the "Petitioning Creditors"), filed an involuntary petition on behalf of the Debtor for relief under Chapter 7 of the Bankruptcy Code with the Clerk of this Court.

2.    On June 28, 2019, this Court entered its Order Denying Motion to Dismiss Involuntary Petition [ECF 20] and Order for Relief [ECF 21] providing the Debtor until July 12, 2019 to file its schedules, statements and other documents required by Fed. R. Bankr. P. 1007(b)(1).

3.      On July 2, 2019, Stephen L. Meininger was appointed and continues to serve as the Chapter 7 Trustee of the Debtor's estate; and on August 1, 2019, the initial meeting of creditors was scheduled and concluded. [ECF 23].

4.      On July 9, 2019, upon the Trustee's application, this Court entered the Order Approving Application for Entry of an Order Authorizing the Employment of Lisa M. Castellano and the Law Firm of Genovese Joblove & Battista, P.A. as Counsel to the Chapter 7 Trustee, Stephen L. Meininger [ECF No. 27].

5.      On July 12, 2019, the Debtor filed is schedules [ECF 29].

6.      On June 19, 2020, the Trustee filed the Chapter 7 Trustee's Notice of Rule 2004 Examination *Duces Tecum* (Document Production Only) [ECF 36] (the "2004 Request"), which sought 20 separate document requests from the Debtor. The 2004 Request required the Debtor to produce documents to the Trustee on or before July 17, 2020. A true and correct copy of the 2004 Request is attached hereto as **Exhibit 1**.

7.      On July 15, 2020, counsel for the Debtor reached out to counsel for the Trustee requesting a 60-day extension of time to response to the 2004 Request; to which counsel for the Trustee stated:

> "No objection to the requested extension assuming that documents will be forthcoming at the conclusion of the extended deadline (ie, you will not simply be objecting or moving for a protective order upon the expiration of the extended deadline). Let us know if this is agreeable."

A true and correct copy of the email correspondence between counsel for the Debtor and counsel for the Trustee is attached hereto as **Exhibit 2**.

8.      On July 17, 2020, the Debtor filed its motion for extension of time and stated that the Trustee has not responded to a request for a 60-day extension of the 2004 Request. [ECF 37].

9.      On September 15, 2020, the Debtor served the Debtor's Response to Chapter 7 Trustee's Notice of Rule 2004 Examination *Duces Tecum* (the "Response"), a copy of which is attached hereto as **Exhibit 3**.

10.      On October 21, 2020, counsel for the Trustee sent correspondence to counsel for the Debtor regarding the objections contained within the Response (the "Letter"). A true and correct copy of the correspondence to the Debtor's counsel is attached hereto as **Exhibit 4**. The Letter specifically described that the Debtor has no basis to assert that the requested documents and communications as privileged, as the privilege belongs to the Trustee, and provided two business days for the Debtor's counsel to agree to produce the requested documents and communications, with such production to be made within 30 days. No response to this letter has been received.

11.      On October 27, 2020, the Trustee filed his Motion to Compel Production of Documents From Apex Road Commercial, LLC [ECF No. 39] (the "Initial Motion"). The Initial Motion was set for hearing on February 9, 2021 at 10:00 A.M. [ECF No. 41], but was then rescheduled by the Court for 9:30 A.M. on February 9, 2021 [ECF No. 42] (the "Hearing").

12.      On February 5, 2021, the Debtor filed its Response to Chapter 7 Trustee's Motion to Compel Production of Documents From Apex Road Commercial, LLC [ECF No. 44] (the "Response").

13.      A few days prior to the Hearing, undersigned counsel began suffering symptoms commonly associated with COVID-19.  On the date of the Hearing, undersigned counsel for the Trustee was tested for COVID-19, and was diagnosed positive. Due to this illness, undersigned counsel missed the Hearing, and otherwise failed to make timely accommodations, such as seeking a continuance or requesting coverage. Accordingly, due to these unforeseen circumstances,

counsel for the Trustee did not appear for the Hearing. As a result, the Court denied the Initial Motion without prejudice for lack of prosecution.

## **RELIEF REQUESTED**

14.     To date, the Trustee has not received a response to the Letter, and the Debtor has failed to produce the documents requested through the 2004 Request. Upon setting the Hearing on the Initial Motion, the Debtor filed the Response, which is invalid for many reasons. Accordingly, the Trustee files this renewed Motion and seeks an order compelling the Debtor to turnover all documents requested under the 2004 Request.

15.     Through the 2004 Request, the Trustee seeks the turnover of the file(s) relating to the Debtor, and all attorney files relating to the Debtor. The Debtor improperly objected to the majority of the requests based upon the request being "beyond the scope" and seeking documents between "the Phillips Parties[1] and their agents, attorneys or other persons acting on behalf of the Phillips Parties" as privileged based upon work product, attorney-client privilege, and other applicable privileges. However, the Debtor and the Phillips Parties were co-defendants; therefore, there is no legitimate claim of privilege and the Trustee is entitled to review of the entire files relating to the Debtor.

**I.      The documents requested are relevant and within the scope of Rule 2004.**

16.     The discovery sought by the 2004 Request is necessary and appropriate in this case as the Debtor has outright refused to produce the requested documents.  Rule 2004 authorizes this Court to Order the examination of any entity relating to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate."

---

[1] The "Phillips Parties" shall collectively mean Donald E. Phillips and the Lost Heaven Trust.

17.    "Rule 2004 discovery is broader than discovery under Federal Rules of Civil Procedure, and has fewer procedural safeguards. It can be legitimately compared to a fishing expedition." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). "The purpose of such a broad discovery tools is to assist the Trustee in revealing the nature and extent of the estate; ascertaining assets; and discovering whether any wrongdoing has occurred." *In re Corso*, 328 B.R. 375, 383 (E.D.N.Y. 2005). *In re Mavashev,* 559 B.R. 332, 336 (Bankr. E.D.N.Y. 2016).

18.    The Trustee's demand for turnover of documents is based upon the application of the following provisions of the Bankruptcy Code:

a.    Section 541(a)(1) of the Bankruptcy Code, which defines property of the estate to include "***all legal or equitable interests of the debtor in property as of the commencement of the case***" (emphasis added), and would therefore include the documents requested by the Trustee;

b.    Section 542(e) of the Bankruptcy Code, which provides in relevant part that "the court may order an ***attorney,*** accountant, or other person ***that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee***" (emphasis added);

c.    Section 542(a) of the Bankruptcy Code, which provides in relevant part that an entity "in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title ***shall deliver to the trustee, and account for, such property or the value of such property*** . . ." (emphasis added); and

d.    Section 543 of the Bankruptcy Code which, to the extent applicable, requires "custodians" to turnover property of the estate to a trustee.

19.    In order to complete his investigation, there are twenty categories of documents the Trustee is seeking from the Debtor, which are more specifically outline in the 2004 Request, Exhibit 1.

20.    In the instant matter, the Debtor has not set forth any plausible arguments that the

2004 Request imposes an undue burden on it. Instead, it made boilerplate "beyond the scope" objections and made baseless claims as to privilege. It is clear that the 2004 Requests are all well within the purview of Rule 2004 as each request seeks information related to the Debtor. As the document requests relate to the Debtor, the Trustee's administration of the Debtor's estate, and the investigation of claims that the estate may hold, the requests are clearly relevant.

## II.   The Debtor's attorney-client privilege passed to the Trustee.

21.     There is no legitimate claim of privilege. As a threshold matter, this argument should be viewed in the light of the fundamental principle that "the party invoking the privilege has the burden of establishing the existence of the attorney-client relationship and the confidential nature of the communication." *In re Grand Jury Proceedings* (*Freeman*), 708 F.2d 1571, 1575 (11th Cir.1983), citing *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir.) cert. denied 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978).  The Debtor fails to meet its burden preventing turnover of the documents.

22.     First, the Debtor's privilege passed to, is controlled by, and may be waived by the Trustee to the extent an attorney-client privilege exists with respect to bankrupt corporate entity. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 358, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (holding "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to pre-bankruptcy communications."). The Debtor is a corporation, thus the Trustee controls that privilege unequivocally under the analysis of *Weintraub*.

## III.   The co-client exception provides that documents concerning the Phillips Parties must be provided to the Trustee.

23.     With respect to the documents and communications of the individual principals who ran the Debtor, the Trustee is not certain (as no documents, nor a privilege log, were produced)

that there is a subjectively reasonable expectation of an individual attorney-client relationship between the Debtor and either Donald E. Phillips or any representative of the Lost Heaven Trust. Moreover, even if there was an individual attorney-client relationship with the Phillips Parties, such representation would be as joint clients with the Debtor. It is well-established "that joint clients may not assert the attorney-client privilege against each other in subsequent adverse litigation between them." *In re Ginn-LA St. Lucie Ltd., LLLP*, 439 B.R. 801, 804 (Bankr. S.D. Fla. 2010) (citing *In re Mirant Corp.*, 326 B.R. 646, 650 (Bankr. N.D. Tex. 2005)); *accord In re Fundamental Long Term Care, Inc.*, 489 B.R. 451 (Bankr. M..D. Fla. 2013).

24.    In *Ginn*, the chapter 7 trustee was seeking turnover of records of debtor entities related to a transaction in which the debtors pledged of all of their assets to secure a loan, the proceeds of which flowed to non-debtor, parent companies. In particular, the trustee was seeking communications between the parent companies and the law firms that represented all of the companies in connection with the disputed transaction. The parent companies attempted to withhold documents from the chapter 7 trustee based on the assertion of attorney-client privilege. The Court found that a co-client relationship existed between the debtor and non-debtor entities, that the trustee owned the privilege for the debtor entities, and that the non-debtor, parent companies' communications were subject to the co-client exception and must be turned over.

25.    The Court in *Fundamental* reached a similar conclusion with respect to litigation matters.  In *Fundamental*, a group of plaintiffs were pursuing wrongful death cases against a parent and subsidiary health care facility. The parent was subject of a receivership proceeding in Maryland. The subsidiary was defunct. A number of law firms were engaged by the receiver to represent the parent and subsidiary and defend against the wrongful death claims. After obtaining a default judgment against the defunct subsidiary, the judgment creditors placed the entity into an

involuntary chapter 7 bankruptcy and a trustee was appointed.  The trustee sought turnover of all communications between the debtor entity, the non-debtor parent entity, and the law firms. The Court in *Fundamental*, based on the same well-settled law as in *Ginn*, found that a co-client relationship existed between the debtor entity and the non-debtor entity, and that the non-debtor parent was not entitled to claim privilege to prevent disclosure to the trustee.

26.    Here, it is clear that the Debtor has no basis to assert that the requested communications are privileged, as the privilege belongs to the Trustee. At best, the Phillips Parties are co-clients with the Debtor, and still cannot maintain the attorney-client privilege, preventing turnover to the Trustee. In fact, the Debtor's reliance on *In re Tippy Togs of Miami, Inc.*, 237 B.R. 236, 238 (Bankr. S.D. Fla. 1999) is misplaced. The *Tippy Togs*, the debtor was not the client with control over the privilege; the client was solely the individual equity owner of the Debtor. *Id*. Therefore, pursuant to the above case law, there is no reasonable basis to withhold production of the requested documents based on a misapprehended privilege.

**IV.    Certificate of Good Faith Conferral.**

27.    Pursuant to Local Rule 7026-1, on October 21, 2020, counsel for the Trustee sent the Letter to counsel for the Debtor in an attempt to resolve the issues herein without court intervention; however, counsel for the Debtor has not respond.

WHEREFORE, the Trustee respectfully requests this Court to enter an Order (i) granting the Motion; (ii) compelling the Debtor to comply with the 2004 Request by producing responsive documents immediately; (iii) awarding such other and further relief as the Court deems necessary and appropriate.

DATED: February 10, 2021.

GENOVESE JOBLOVE & BATTISTA, P.A.
*General Counsel to the Chapter 7 Trustee*
100 N. Tampa Street, Suite 2600
Tampa, Florida 33602
Telephone: (813) 439.3100
Telecopier: (813) 439.3110

By:  */s/ Eric D. Jacobs*
     Michael A. Friedman, Esq.
     Florida Bar No. 71828
     Email: mfriedman@gjb.law
     Lisa M. Castellano, Esq.
     Florida Bar No. 748477
     Email: lcastellano@gjb.law
     Eric D. Jacobs, Esq.
     Florida Bar No. 85992
     Email: ejacobs@gjb.law

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 10, 2021, a true and correct copy of the foregoing document was served electronically to all registered users by virtue of the Court's CM/ECF System, and via First Class U.S. Mail to the below recipients:

Apex Road Commercial, LLC
142 West Platt Street
Tampa, FL 33606

By:  */s/ Eric D. Jacobs*
     Eric D. Jacobs, Esq.